UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NIYATTI WINTERS,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. SAWERIS et al.,<br><br>    Defendants. | No. ED CV 17-0538-JVS (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## BACKGROUND

On March 14, 2017, Niyatti Winters ("Plaintiff"), then a state prisoner at Wasco State Prison-Reception Center in Kern County, California, filed a pro se civil rights complaint under 42 U.S.C. § 1983.[1] Dkt. 1 ("Complaint"). The Complaint arises out of Plaintiff's attempts to obtain medical care for injuries he sustained at the Southwest Detention Center ("SWDC") in Murrieta, California. Plaintiff sues the following Defendants in their individual capacity:

---

[1] On April 3, 2017, Plaintiff notified the Court that he had been transferred and provided a new mailing address at Chuckawalla Valley State Prison. Dkt. 7.

(1) Riverside County Sheriff Stan Sniff; (2) Dr. Saweris, a physician for Corrections Health Services ("CHS"); (3) John/Jane Doe, the Medical Director of CHS; (4) Jane Doe, a nurse for CHS; and (5) Deputy Barrios. Complaint at 3-4.[2]

Under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint to determine whether the action is frivolous or malicious; fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## PLAINTIFF'S ALLEGATIONS AND CLAIMS

Taking the allegations of the Complaint as true, Plaintiff received inadequate medical care after he was attacked by other inmates with whom he was jailed. Prison officials subsequently reassigned Plaintiff to the same "pod" where he had been attacked, even though he had alerted them to the danger to his safety.

**A.  Plaintiff's Injuries and Treatment**

On June 11, 2015, Plaintiff was assaulted in "Epod Dayroom 1" at the SWDC by inmates Erik Godina and Edgar Silva, validated members of the Independent Riders gang. Complaint at 11; see id. at 28-29. During the assault, Plaintiff was sprayed with a "deter[r]ent agent." Id. at 11. He sustained two injuries—a cut above his right eye and a broken arm. Id. Plaintiff was immediately seen by Dr. Saweris, who told two deputies that Plaintiff did not need to go to the emergency room. Id. Even though his wrist was "grotesquely swollen," Dr. Saweris only gave Plaintiff an icepack and an ACE bandage. Id. The cut above his eye was never treated. Id. Plaintiff, who was barefoot and

---

[2] All citations to the Complaint use the CM/ECF pagination.

still "saturated in the deter[r]ent agent," was sent to "F pods programs room" to wait for the gang unit to interview him. Id. When Plaintiff arrived, he asked for Tylenol. Id. He was not given any medication because he "was not housed in that part of the jail." Id. Deputy Barrios was present when Plaintiff told the attending nurse that he thought his wrist was broken. Id. The nurse examined Plaintiff's wrist and told him that his tendons were swollen, which was "common with that type of injury." Id. After the gang unit interviewed Plaintiff, he "asked to use the restroom on the recreation yard where [he] was left in excruciating pain for 6 hours." Id. Plaintiff was then "escorted barefoot back to Epod Dayroom 2" and prescribed 4 Tylenol per day. Id.

The Tylenol "did nothing" because of "bone on bone contact," and Plaintiff was in "excruciating pain" for 12 days. Id. On June 23, 2015, he was taken to the SWDC's x-ray suite. Id. X-rays of Plaintiff's hand, arm, and wrist were taken, but the x-ray technician refused to give Plaintiff the results. Id. On June 24, 2015, a CHS nurse was "vague about the prognosis" and told a deputy sheriff, "He needs to go out." Id.; see id. at 18. Plaintiff was then taken to the Riverside University Health Systems ("RUHS") emergency room in Moreno Valley, California. Id. at 11; see id. at 15-16. A physician told Plaintiff that his arm was broken and his "arm and hand had started mending offset at the wrist joint" due to the delay in treatment. Id. at 11-12. Plaintiff's arm was splinted. Id. at 12; see id. at 19.

Upon his return to the SWDC, Plaintiff filed a grievance, which appears to have been reviewed by Deputy Barrios. Id. at 12; id. at 6. On July 10, 2015, a judge issued an order to expedite Plaintiff's treatment. Id. at 12.[3] On July 27, 2015, Plaintiff was taken to the RUHS's orthopedic clinic. Id. His splint was

---

[3] The reason for the judge's involvement is not clear from the Complaint; one likely possibility is that the judge was presiding over Plaintiff's criminal case.

3

removed and x-rays, "pre-op," and a CT scan were performed. Id. Dr. Kaputo explained that Plaintiff would need surgery, including re-breaking and resetting his arm, removing a piece of bone and adding a plate and screws, and performing a performing a partial wrist fusion with pins. Id. When Plaintiff arrived back at the SWDC, the deputies "working the transport area" put him in a holding cell with Godina and Silva. Id. at 31, 35. That day, they were indicted for assaulting Plaintiff; however, he had not been made aware that charges were being brought. Id. Godina and Silva threatened, but did not physically harm Plaintiff, probably because they sensed it was a setup. Id. Even after prison officials were made aware of this incident, no steps were taken to ensure his safety. Id.

On September 16, 2015, the managing attorney for the Prison Law Office sent Sheriff Sniff a letter "making him aware" of Plaintiff's condition, the impact it was having on Plaintiff's "day to day functions," and the need to have the surgery scheduled "forthwith." Id. at 12; see id. at 30, 34.

On September 24, 2015, Plaintiff returned to the RUHS's orthopedic clinic for another consultation "due to so much time passing." Id. at 12. Additional x-rays were taken and a different surgeon informed Plaintiff that the longer he waited to have the surgery, the more cartilage deterioration would occur. Id. Plaintiff was also told that he would have severe arthritis and would never regain "full function of [his] hand/wrist dexterity." Id.

The surgery was performed on October 18, 2015. Id. While he was still recovering, Plaintiff was taken to the Riverside County Jail in Indio, California. Id. at 31, 35. In April 2016, he was taken back to the SWDC, where he was placed in temporary housing for 48 hours. Id. Plaintiff was then told that he was going back to the same unit where he had been assaulted, which was designated housing for validated members of the Independent Riders gang. Id. Plaintiff voiced his concerns to a "supervisor from

4

classification," who told that nothing could be done. Id. Plaintiff "was forced to stay there under fear of constant threat," until he was sent to prison. Id.

Even after the surgery, Plaintiff is "considerably" limited and in constant pain. Id. at 12. He is paranoid that Independent Riders members will retaliate against him or his loved ones for Godina's and Silva's convictions. Id. at 32, 36. He suffers from anxiety because he knows that the RCSD will not protect them. Id. He also has "bouts of severe depression" from "contemplating a future in which [he] will not be able to provide for [his] family or [him]self, due to [his] injury." Id. Because Plaintiff is unable to "enjoy everyday activities," he has feelings of stress, frustration, and inadequacy. Id.

**B.     Plaintiff's Claims**

Based on the foregoing, the Complaint raises three claims against Defendants: (1) deliberate indifference to serious medical needs ("Claim One"); (2) negligence ("Claim Two"); and (3) intentional infliction of emotional defense ("Claim Three"). Id. at 5, 31-32, 35-36. Plaintiff seeks money damages, including a "lifetime annuity." Id. at 33, 37.

**III.**

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford him the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading

standard . . . applies only to a plaintiff's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and alteration omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, it has discretion to dismiss with or without leave to amend. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987)). But if after careful consideration it is clear

6

that a complaint cannot be cured by amendment, the Court may dismiss it without leave to amend. Id. at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" when plaintiffs could not cure the "basic flaw" in the pleading); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

## IV.
## DISCUSSION

**A.     Plaintiff's Deliberate Indifference Claim**

In Claim One, Plaintiff alleges that Defendants failed to provide adequate medical care for his injuries resulting from the June 11, 2015 attack. Complaint at 5. He also alleges that the Riverside County Sheriff's Department ("RCSD") is responsible for the safety and welfare of "all inmates and detainees" housed in county facilities. Id. However, Plaintiff does not specify whether he was a convicted prisoner or a pretrial detainee at the time he allegedly received inadequate medical care.

Convicted prisoners who sue prison officials for injuries suffered while in custody do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, whereas pretrial detainees sue for such injuries under the Fourteenth Amendment's Due Process Clause. Castro v. Cty. of L.A., 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc), cert. denied, __ U.S. __, 137 S. Ct. 831 (2017); see also Kingsley v. Hendrickson, __ U.S. __, 135 S. Ct. 2466, 2475 (2015) (holding that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'" (citation omitted)).

The Ninth Circuit has held that the Eighth Amendment's deliberate-indifference standard applies to pretrial detainees' claims of inadequate

7

medical care under the Fourteenth Amendment. See Simmons v. Navajo Cty., 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, . . . we apply the same standards in both cases." (citations omitted)). Under the Eighth Amendment, a claim for inadequate medical care requires proof of both an objective component—i.e., the existence of a "serious medical need"—and a subjective component—a prison official's "deliberate indifference" thereto. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). An inmate's medical need is "serious" if failure to treat his medical condition "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

     A prison official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)). This "requires 'more than ordinary lack of due care.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Neither gross negligence nor a difference of medical opinion is sufficient to establish deliberate indifference under the Eighth Amendment. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

     Recent cases, however, have called into doubt the traditional understanding that a pretrial detainee's claim for inadequate medical care is determined under the Eighth Amendment's subjective deliberate-indifference standard. In Kingsley, 135 S. Ct. at 2472-73, the U.S. Supreme Court held that

8

a pretrial detainee's due process claim for excessive force, unlike a convicted prisoner's similar claim under the Eighth Amendment, is governed by an objective standard. In Castro, 833 F.3d at 1070, the Ninth Circuit, on rehearing en banc, extended Kingsley's reasoning to pretrial detainees' failure-to-protect claims and overruled circuit precedent "to the extent that it identified a single deliberate indifference standard for all § 1983 claims and to the extent that it required a plaintiff to prove an individual defendant's subjective intent to punish in the context of a pretrial detainee's failure-to-protect claim." The Ninth Circuit concluded that "the test to be applied under Kingsley must require a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. at 1071. It therefore set out the elements of a Fourteenth Amendment failure-to-protect claim as follows: (1) the defendant made an intentional decision with respect to the plaintiff's conditions of confinement, (2) those conditions put the plaintiff at substantial risk of serious harm, (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious, and (4) by not taking such measures, the defendant caused the plaintiff's injuries. Id.

     Some district courts have applied Castro's reasoning to pretrial detainees' due process claims for inadequate medical care. For example, in Guerra v. Sweeny, No. 13-01077, 2016 WL 5404407 (E.D. Cal. Sept. 27, 2016), the district court held that

> [w]hile no court has set out what the exact contours of what the Castro rule would look like in the untreated medical needs context, the stripping of the Eighth Amendment deliberate indifference standard of a subjective component—as Castro

9

implies to be appropriate in this context—is a relatively simple feat: (1) [t]he plaintiff made a request for medical care; (2) [t]he plaintiff had a serious medical need; (3) [t]he defendant did not take reasonable steps to obtain or provide medical care, even though a reasonable officer (or reasonable medical staff) in the circumstances would have appreciated the high degree of risk involved—making the likelihood of harm obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

Id. at *3 (footnote omitted); see also Borges v. City of Eureka, No. 15-00846, 2017 WL 363212, at *9 (N.D. Cal. Jan. 25, 2017) (finding that, "when considered alongside Castro's broad interpretation of Kingsley, . . . Castro's objective 'deliberate indifference' test . . . is an appropriate lens through which to evaluate" pretrial detainees' Fourteenth Amendment claims arising from untreated serious medical needs); but see Ricketts v. Holland, No. 16-01270, 2016 WL 6155926, at *3 (C.D. Cal. Oct. 21, 2016) (applying subjective standard for deliberate indifference notwithstanding Castro); Guerra, 2016 WL 5404407, at *3 (stating that after Castro, most district courts in this circuit have continued to apply Eighth Amendment deliberate-indifference standard to pretrial detainees' medical-needs claims and collecting cases).

Thus, should Plaintiff elect to file a First Amended Complaint, he must indicate the date of his conviction and whether he is bringing Claim One under the Eighth and/or the Fourteenth Amendment.

**B.      Plaintiff's Claims Against the Medical Director of CHS**

To the extent Plaintiff included the Medical Director solely on the theory that he or she supervised CHS employees' actions, mere supervision is not sufficient to establish liability. In Iqbal, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." 556 U.S. at 676.

10

However, the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

The Ninth Circuit explained that "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id. at 1207 (citation omitted). A causal connection can be established "by setting in motion a series of acts by others" or "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-08 (citations and alterations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (citation omitted).

Here, Plaintiff's only allegation against the Medical Director is that he or she "allowed an employee to work after numerous complaints." Complaint at 3. Plaintiff therefore fails to state sufficient facts to support his legal theory against the Medical Director, making dismissal appropriate.

## C. Plaintiff's State-Law Claims

In Claims Two and Three, Plaintiff alleges state-law claims for negligence and intentional infliction of emotional distress; however, he has not alleged that he complied with the provisions of California's Government

11

Claims Act before filing suit. Id. at 31-32.[4]

Under California's Government Claims Act ("Act"), a plaintiff may not bring suit for monetary damages against a public employee or entity unless he presented his claim to the California Victim Compensation and Government Claims Board ("Board") no more than six months after the cause of action accrued. Cal. Gov't Code §§ 905, 915, 945.4, 950.2, 950.6(a); Hoffman v. Quach, No. 14-1009, 2017 WL 840660, at *16 (E.D. Cal. Mar. 3, 2017); Briggs v. Lawrence, 230 Cal. App. 3d 605, 613 (1991). Compliance with the Act's "claim-presentation requirement" is an element of a cause of action for damages against a public entity or official. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1241, 1244 (2004). Failure to allege facts demonstrating compliance constitutes failure to state a cause of action and will result in dismissal of state-law claims. See id. at 1240-41.

Federal courts require compliance with the Act for pendant state-law claims that seek damages against state public employees or entities. See Karim-Panahi v. L.A. Police Department, 839 F.2d 621, 627 (9th Cir. 1988) (finding that failure to comply with Act's claim-filing requirements bars pendent state-law tort claims). Thus, state tort claims included in a federal action under 42 U.S.C. § 1983 may proceed only if the claims were first presented to the state

---

[4] In order to state a § 1983 claim, Plaintiff must allege that particular defendants personally participated in the alleged rights deprivations. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To the extent Claim Two could fairly be construed as a failure-to-protect claim under the Eighth and/or the Fourteenth Amendment, Plaintiff makes no such allegations of personal participation against the defendants. Plaintiff does allege that RCSD deputies "working the transport area" put him in a holding cell with Godina and Silva on the same day they were indicted for attacking Plaintiff and a "supervisor from classification" knew Plaintiff had been re-assigned to the same "pod" where the attack occurred. Complaint at 31. However, these individuals were not named as defendants in this action.

in compliance with the Act. Volis v. Hous. Auth. of the City of L.A. Emps., __ F. App'x __, 2016 WL 6561278, at *1 (9th Cir. Nov. 4, 2016) (finding that district court properly dismissed state-law tort claims because plaintiff "failed to file a timely claim as required by the California Government Claims Act"); Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1224-25 (E.D. Cal. 2009) ("Presentation of a timely tort claim is a jurisdictional prerequisite to maintaining a cause of action against a public entity."). A plaintiff, moreover, must affirmatively allege in his complaint that he complied with the Act. See Dowell v. Contra Costa Cty., 928 F. Supp. 2d 1137, 1151 (N.D. Cal. 2013) ("The 'requirement that a plaintiff must affirmatively allege compliance with [the Act] applies in federal court.'" (citation omitted)).

Here, the Complaint does not state that Plaintiff presented his state-law claims to the Board. Thus, Claims Two and Three must be dismissed for failure to state a claim. Plaintiff, however, should be granted leave to amend these causes of action to allege facts showing that he has satisfied the claims-presentation requirement. See Mohsin v. Cal. Dep't of Water Res., 52 F. Supp. 3d 1006, 1018 (E.D. Cal. 2014) (dismissing state-law claims with leave to amend when plaintiff's complaint "ma[de] no reference" to claims-presentation requirement and "present[ed] no facts to indicate that the requirement was met").

### D. Request for Counsel

Plaintiff requests appointment of counsel and states that he "is unable to afford" an attorney. Dkt. 2, 6.

There is no constitutional right to appointed counsel in a civil rights case. See Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). Under 28 U.S.C. § 1915(e), the Court has discretionary power to request an attorney to represent a party unable to afford counsel. However, if Plaintiff is seeking an order for an attorney to represent him without compensation, § 1915(e) does

not authorize appointment of counsel to involuntary service. See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296, 310 (1989); United States v. 30.64 Acres of Land, 795 F.2d 796, 801 (9th Cir. 1986). If Plaintiff is seeking funds from the Court to pay counsel, "[t]he Supreme Court has declared that 'the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress.'" Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989) (citing United States v. MacCollom, 426 U.S. 317, 321 (1976), alterations in original). Congress has not provided funds to pay counsel secured under 28 U.S.C. § 1915(e). See 30.64 Acres of Land, 795 F.2d at 801.

The Court treats Plaintiff's request, therefore, as asking the Court to request an attorney to represent him without compensation. After an evaluation of both "the likelihood of success on the merits" and Plaintiff's ability "to articulate his claims pro se in light of the complexity of the legal issues involved," Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986), the Court finds that the exceptional circumstances which are necessary to grant Plaintiff's request do not appear to exist at this time. As such, his request is denied.

## V.

## CONCLUSION

The Complaint largely fails to state a claim upon which relief may be granted and thus must be dismissed. Because it is not absolutely clear that the Complaint's deficiencies cannot be cured by amendment, dismissal will be with leave to amend. Accordingly, if Plaintiff still desires to pursue his claims, he must file a First Amended Complaint ("FAC") within thirty-five (35) days of the date of this Order, remedying the deficiencies discussed above. Specifically, the FAC must clearly identify each cause of action and which Defendants are named in each cause of action, and it must clearly and succinctly describe what each Defendant did or failed to do and the damage or

14

injury that resulted.

The FAC should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to use.

**Plaintiff is admonished that if he fails to timely file a timely FAC this action may be dismissed with prejudice for failure to diligently prosecute and for the reasons discussed in this Order.**

Dated: April 28, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge